## Richard Thompson, Appellee, v. O'Gara Coal Company, Appellant.

1. STATUTORY LAW—*how act of revision construed.* Different parts of a revisory act which relate to the same subject-matter, being passed at the same time, are to be construed together as though they were parts of the same enactment.

2. MINES AND MINERS—*sections 23 and 28 of act construed.* Held, that the top and bottom man provided for in section 23 are the same as those referred to in section 28 and the times fixed for them to be at their respective posts of duty is governed by said section 28, and that such times are at least thirty minutes before the hoisting of coal commenced in the morning and at least thirty minutes after the hoisting of coal has ceased at night.

Action in case for personal injuries. Appeal from the Circuit Court of Saline county; the Hon. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1910. Reversed and remanded. Opinion filed December 7, 1910.

M. S. WHITLEY, for appellant; MASTIN & SHERLOCK, of counsel.

H. ROBERT FOWLER and JOHN L. THOMPSON, for appellee.

MR. PRESIDING JUSTICE SHIRLEY delivered the opinion of the court.

This was an action to recover damages for an injury received by appellee while employed in the coal mine of appellant. His injury was received about two o'clock on the morning of February 18, 1910, and the hoisting of coal had ceased several hours before then, or at about 4:30 P. M. of the previous day, and there had been no hoisting of coal between that time and the time of appellee's injury.

The declaration upon which the case was submitted to the jury contained two counts, the second and third, the second count averring a wilful failure to comply with the mining statute in not having at the time a

competent man at the top and bottom of the shaft charged with the duty of attending signals, preserving order and enforcing the rules governing the men on the cage, by means whereof the injury was occasioned. The third count charged the appellant had a code of signals used in the hoisting and lowering of cages by signalling the engineer from the bottom man to the top man and engineer; that the engineer had been notified that appellee was going into the sump and it was the duty of the defendant not to lower the cage until signalled by the bottom man; that the defendant wilfully lowered the cage without receiving a signal from the bottom man whereby appellee was injured.

One of the errors relied on here is that the court refused to direct a verdict at the close of the evidence and it is argued that the evidence without dispute, showing the accident occurred several hours after the hoisting of coal ceased, there was no evidence tending to prove the declaration. This involves an interpretation of the provisions of the statute upon which the counts are based; whether the operator should have stationed a man at the top and bottom of the shaft of the mine which was operated by steam power charged with the duty of attending signals, at the hour when appellee was injured.

The act of 1899 was entitled "An act to revise the laws in relation to coal mines and subjects relating thereto and providing for the health and safety of persons employed therein." It contained thirty-four sections.

Section 23 provided for communicating signals from the bottom man to the top man and engineer and then prescribed the signals and what they signified. This section contains a proviso that the operator might with the consent of the inspector add to the code of signals in his discretion, for the purpose of increasing its efficiency or of promoting the safety of men in the mine, and that such code should be conspicuously posted.

Section 28 provided for the top and bottom man and prescribed their duties as follows: "At every shaft operated by steam power the operator must station at the top and bottom of such shaft a competent man charged with the duty of attending to signals, preserving order and enforcing the rules governing the carriage of men on cages. Said top man and bottom man shall be at their respective posts of duty at least a half hour before the hoisting of coal begins in the morning, and remain a half hour after hoisting ceases for the day."

The sections above quoted were parts of the revision passed at the same time relative to the same subject-matter and are to be read together as though they were parts of the same enactment. Endlich Int. of Statutes, sec. 45.

With some additions in the revision, both these sections were incorporated in the same section at the time of their first enactment. See section 6, act entitled "Mines and Miners" Session Laws 1887, where the top man and the bottom man are provided, and a code of signals between them prescribed. We are of opinion therefore that the top man and bottom man provided in section 23 are the same provided for in section 28, and that the time fixed for them to be at their respective posts of duty in section 28 governs in both sections.

Section 28 above quoted is not free from ambiguity. The original act of which section 28 is a revision required the top man and bottom man should be at their respective posts of duty at least thirty minutes before the hoisting of coal commenced in the morning and remain at least thirty minutes after the hoisting of coal has ceased at night. Sec. 6, *supra*. It will be noticed the words "of coal" have been left out of the present statute and the words "at night" have been changed to read "for the day." While section 28 of the present statute is ambiguous we are of opinion it should read as it did originally, and that the law maker either

changed it unintentionally, or he regarded it as so apparent the words "after hoisting ceases for the day" referred back to the last antecedent "coal," it was not necessary to repeat it. We think section 28 means what it originally said that the bottom man and top man should remain at their posts at least thirty minutes after the hoisting "of coal" ceases for the day.

In large mines as shown here "jerry work" is going on in the mine all through the night and the cage frequently goes up and down and this the Legislature must have known. If it had been intended the top man and bottom man should be there at such times, it would have provided they should be at their posts at such times or at all times, but if such requirement be desirable it is for the Legislature and not the courts to furnish the remedy.

We are of the opinion there was no evidence tending to prove the wilful failure of appellant as averred in the declaration and as the appellee is at liberty to proceed further we express no opinion upon the evidence in the case except as to its application to the declaration before us.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*